17-2510. Thank you. Thank you. You may proceed. Thank you, Your Honor. Morning Your Honors, may it please the Court. The District Court's holding that CENTTRAC must prove that Sonitor makes, quote, all claimed elements is erroneous and is contrary to cross medical, which holds that to prove direct infringement, CENTTRAC only has to prove that Sonitor completes the accused slash claimed system, even if that completion involves just adding the last element. Now, it's very notable that the District Court decision below does not discuss or distinguish cross medical on its facts or explain anything about why it's not applicable. It fails to treat or cite it in any way at all. And in fact, the District Court decision below on making, requiring the all elements to be made, is in substance, at least, we would argue, pretty much the same holding that this Court subsequently reversed in the Lifetime Industries case that we cited in our brief. Your Honors, there are two claim limitations at issue. I won't quote them verbatim, they vary among the claims, but all the claims at issue require affirmatively a communication link between the ultrasound transmitters and the source of the TSI, and they all require a system, a sort of location code mapping system that be set up so that when the transmitters transmit their location codes, the system can map each one uniquely to a location. With regard to that last limitation, it's very important to note that if you look at the appendix, you'll see that Sonneter asserted an entire non-infringement argument on the grounds that the data in their system could not do this unique mapping, and therefore they were missing a claim limitation. And that was disputed fact about whether they could or couldn't, but no one disputed that that's an affirmative limitation of the claim. The last point I'm making is simply this. At pages 26 to 31 of our opening brief, we cited a number of documents showing this last claim limitation being added by Sonneter. Sonneter's brief, as we read it at least, the red brief here, they don't dispute the fact that their personnel add those two limitations, and particularly let's focus just on the last one, the location code mapping. They don't dispute the fact that before their personnel do... When you say last, do you mean assembly completing or just the last listed in the various claims? I'm sorry, I'm not understanding. You used the word last limitation. I want to know whether that means the last one listed in the claims or the one that once taken completes the assembly. It's the latter, and I think I would say it this way, Your Honor. They don't dispute that. Let's assume for a moment they're not responsible for the third-party installers. We dispute that because they supervise and oversee it, but let's take that as a given for a moment. Sonneter's red brief, as I read it here, they don't dispute, and I think this goes to your question, Judge Toronto. They don't dispute that when their personnel step in to do this configuration, there are two of the accused limitations missing, and that after their personnel set up the communication link and enter the location code, that those limitations are there. As I read the Sonneter brief, they're arguing that we just have the holding of lifetime industries and cross-medical wrong. So it seems to us the last point I'm making is someone's entitled to summary judgment here because... I'm trying to ask you about this. I thought that the district court said that there were several unaddressed alternative theories of non-infringement. I don't recall that, Your Honor. I'm sorry. I don't recall him saying there were unaddressed alternative non-infringement. It may be there, and maybe I'm just missing something. I thought it maybe was in a footnote. Well, he did say in a footnote that you forfeited this final assembly theory because you never raised it before. I want to very carefully address this procedural history, Your Honor. Very carefully. It's very critical and very important that the court fully appreciate what happened procedurally, and thank you for bringing that question up. Your Honor, in terms of all of these allegations in Sonneter's brief, that Centrac's raising new issues on appeal and arguing joint infringements and so forth and so on, first, in summary and most importantly, it didn't happen, and that's why when you look at the red brief, if you look at pages, for example, 3, 32, 36, and 37 of the red brief, you'll see statements to this effect, like Centrac's arguing method claims or raising, and they're followed by no citation. Okay. So where before your opposition to their judgment motion did you have the final assembly theory? Just point me to it. I will point you to it, but I would like to review the history. It's at page 128 to 129 of the appendix. What happened, Your Honor, is they filed a summary. Our position was always cross-medical make. Is that your amended complaint? No, no, no. That's our opposition brief, Your Honor. Oh, I meant before your summary judgment brief. Well, before the summary judgment brief, what we did is we filed an amended complaint that charged them with direct infringement by installing. We then served during discovery an expert report. Installing what? The Sonniter Sense real-time location system? Yes. We then served them with an expert report, and you'll see it's 797 to 98, where the expert, excuse me, Your Honor, the expert actually opined that with respect to the issue of direct infringement, Sonniter builds the entire infringing system. He went on to say, although the backbone network required by the Sonniter Sense system may be based on the client's existing network infrastructure, each of the components of the Sonniter Sense portion of the backbone network is configured by Sonniter. In other words, they built it by taking their stuff and configuring it. When they filed for summary judgment, Your Honor, this is the critical point. They didn't file for summary judgment by saying, you've accused us of installing the Sonniter Sense system. We don't. There's no evidence. We get summary judgment. Their summary judgment motion was different. It was, and I'll paraphrase, but I think it's a fair reading, was, aha, we may install the Sonniter Sense system, but that system doesn't include the customer's backbone network. I don't know if they said the first part. I'm paraphrasing. Okay. But I think a fair reading, one thing that's clear, they never moved for summary judgment on the ground they don't install the Sonniter Sense system. Instead, they cited a method claim, BMC Payment Tech. They said, no one makes the entire system because the Sonniter Sense system doesn't have the backbone network, so no one makes the entire system. There's this sort of split infringement argument, and we're off the hook. We had no idea at the time they filed that motion that they were disputing our charge that they installed the Sonniter Sense system. Why? I pled it. They didn't challenge it in their motion, so I had no reason to respond any more than I would argue about whether I had standing, but their witness had testified that he supervises the Sonniter team when they're in the field doing an installation, and they had very carefully drafted their motion specifically addressing the installing charge to say we don't install the backbone network. So we said, here's all the evidence that you installed the rest of it. You don't dispute that. The parties seem to be agreeing with that. The fact that you use a backbone network from someone else, there is no split infringement BMC payment tech in an apparatus claim. The relevant case is cross-medical. We cited that immediately. You're the infringer, and BMC and method claim case doesn't apply. When they came to summary judgment hearing months later, then they said, well, it's not just that we don't install the backbone network. We don't even install the Sonniter Sense system. And if you look at footnote 11 at page 37, I believe it is in the red brief, they seem to agree that that was a new argument that was raised. So what we simply said, Your Honor, is we said, okay, before you were arguing that you put the rest in, but because you don't put the backbone network in, you don't infringe. Now you're saying you don't put the backbone and some other stuff. We simply said our cross-medical argument is unaffected by that, because whether you start with one thing and put the other nine things in, or whether you start with one thing, a third party puts, say, seven more in, so you have eight, and do the last two, we just have to show that you do the last thing. So our cross-medical argument that we've asserted from the beginning is unaffected. Here's the most critical point in response to your question earlier, Judge Shah, when you say, where was it raised earlier? Beyond that procedural history that I just described, beyond us saying, we meet your summary judgment motion with our opposition, then you change it so our same argument applies. Beyond that, everything else in this entire narrative in their brief about joint infringement theories and method claim arguments and new evidence being raised on appeal, it's all inaccurate. None of it is supported by the record. And before I get into what I think should be done with it, I want to just take off a few key points so the Court is not misled by what they're doing with a very simple, straightforward procedural history. At page 39 of the red brief, they cite a certain testimony that their witness gave about this integration they do. And they tell you, that testimony is newly raised by CENTRAC on appeals. It was, quote, never cited in either CENTRAC's opposition or its supplemental briefs. You went through this in the reply brief, right? I went through some of it, but there's one particular additional thing I want to add that I think is not fairly in the reply brief, and that is this, Your Honor. Actually, it's just two points. One of them may be in the brief, forgive me, but it goes together. The two statements they make that are most troubling is late in the case when they claimed this making theory was new. They're telling the Court, throughout this case, CENTRAC's infringement theory was based solely on sonneter's sale of the sonneter's sense-accused problems, as if making was something new, it was always sale. You would expect a sentence like that to be followed by a number of cites where we were pitching the sale theory. It's blank. There's no cites. Quite the contrary, if you look at 797 to 798 and discover our experts said sonneter builds the claim system from, builds as in quote, the rest is not, from the stuff it supplies and configuring the backbone network. And so, and they do this at page 37 of their red brief here. In the footnote, what they're telling you, they agree that they raised a new argument on making that the first time they denied installing the thing is. Can I ask you, was, if I remember right, and I may not be remembering, the red brief makes certain references to contention interrogatories or the kinds of papers that at least under some local rules or some local judges practices, the plaintiff has to submit to say here is precisely what are, what we are contending. Was there such a statement that was required to state your make theory, but that omitted it? No. And in fact, Your Honor, I would go further. You had to submit infringement contentions, right? We did, and there was no issue with infringement contentions. There was no motion brought. In fact, it was quite the opposite. When we responded to their discovery request, as we pointed out in our brief, one of their discovery requests said, a paraphrase, but it was give us your infringement theory. We gave it to them. They wrote us a whole bunch of notes about why. Did that, when you gave it to them, did you say make? No, no. What we did was we gave them like claim charts. They wrote us a deficiency letter and a whole bunch of other responses, but they accepted that. And when we served our expert report, we served them and we said, you're building this. It was all disclosed. And so what happened was the only thing that changed at all was when they said in the face of a charge and an expert report, you're installing your system, when they said, aha, but that doesn't include the backbone network, we said cross medical, that doesn't matter. When they came to summary judgment argument and they said, it doesn't include the backbone network and some other stuff, we said, that's irrelevant. I mean, we dispute that. We think the other stuff is yours, but we said, as long as you're doing the end. But I can't be expected to respond and offer evidence that they're installing the system when I've charged them with that. They haven't disputed that in summary judgment. It would be like in a conventional motion if you have five claim limitations and I say, give me summary judgment. I don't do limitation one that requires aluminum screws. I use steel screws. I might say, no, here's some evidence you use aluminum screws. I might say, no, you have my claim wrong. It covers all kinds of screws. But I wouldn't argue about why, you know, an electric motor in element five of the claim is there. I wouldn't present any evidence. Do you want to save some time for rebuttal? I do. I just, if I could make one more point on the opening, Your Honor. The only point I want to make is on the invalidity thing, and that is, we think the judge just simply mixed up enablement with validity. I'm sorry, enablement with written description. It wouldn't be the first time. It wouldn't be. Your Honor, I hope the procedural history is clear, and I thank you for your time, and I'll save my rebuttal time. Thank you, Judge. May it please the Court. As I understand it, Sentrac's current infringement theory is that we configure the location transmitters, we map the location codes. Those are the last two steps, and, Judge Toronto, you asked this. I said they're the last two steps in time, not in the claim, and therefore we become the final assembler and the maker. And I have several points I want to make about that. The first one is, this is a brand-new argument. The configuring location transmitters. Help me on that because I just didn't get it from your brief. Their complaint says, basically quotes 271A, right? MAKES sells you, so MAKES is there. At what point were they required to say more than MAKE before they opposed your summary judgment motion where they referred, in fact, to this very theory, the cross-medical theory? Under the court's scheduling order, they were required to give us their infringement contentions at a date and I think it was December of 1994. I'm sorry I'm going to be a pest about this. Is there a document like the scheduling order that says, here's what we mean by infringement contentions? It just says, yes, it's in the record, and the scheduling order is at appendix 3823, and then we put infringement contentions also, which are at appendix 1731-32. They gave us infringement contentions, which is... What's the page number? The actual infringement contentions they gave us, the infringement contentions are at, they start at A2133. They go on for about 50 pages. And what they did was... I'm sorry. This actually really matters and I'm going to slow you down. So I'm going to look at 3823, all right? This is the scheduling order, right? That's what you cited just before. Right. And little ii, right? Is that right? Little ii? Yes. Okay. The only thing that requires them to state is the claim elements. This does not require them to specify whether it's make, whether it's use, whether it's sell, whether it's offer, whether it's import. What else do you have? We then sent them an interrogatory, interrogatory number 4, asking them for their infringement contentions. The answers... And what you asked them for was to do what the scheduling order, little 3823, little ii, say, required? The interrogatory just asked for the basis for their infringement contentions in detail. You're trying to find a page for that. And we will get you the... 1742 to 1743, or 1731 to 1732 is the interrogatory. The responses are 1742 to 43, and all they did, we went back and we said separately for each asserted claim and each... What are you reading from? 1742. I'm sorry, and that's your document or their document? That is the appendix, 1742, and that is their interrogatory answer. Right. Tell me first what the question is. That you think they covered this question of is it make, is it use, is it sell, is it offer, what? Right. Separately for each asserted claim and each accused... What are you reading from? Sorry. Each accused product... No, no, no. You've got to give me a page. I need to know what you're looking at. What page are we on? I'm sorry, Your Honor. 1742, appendix 1742. Can we go back to the interrogatory first? Right. The interrogatory is repeated on 1742 and the answer. So now we're on 1741, the top one, interrogatory number one? Number two. Number two. At the bottom. Okay, so that, and this is all about products infringing, which doesn't go to what activities with respect to a product infringes. Well, it does in the sense that it asks for the theories of infringement after that and the complete factual basis for each and where each limitation of the claims are found in the accused product. And it goes on and on. And all they referred to was back to the infringement contentions that we had already just cited to you earlier, the pages of charts that just put the products next to the claims. But the point of all this, Your Honor. So, I mean, I look at this answer to your interrogatory as essentially objecting to it for various different reasons and then referring you back to the infringement contentions. So to what extent did you follow up and say, your answer to my interrogatory number two is deficient. You need to do better than this, and I insist that you give us a better answer than this. I don't think that we did that, Your Honor, because... You did that with respect to answers for other interrogatories of theirs but not for interrogatory number two. Right, because their answer to interrogatory number two... First of all, am I right about that? Yes, you are. Their interrogatory number two incorporated 50 pages of claim charts where they were reading the claims, the asserted claims on our system. They never said anything about installation. They never said anything about making... And I think most importantly, for purposes of this, they never said anything about mapping location codes. There was never, during the entire case of infringement contentions, expert reports, there was never any reference to mapping location codes, which seems to be the key now. I suppose if the amended complaint says you're making the invention by installing your Sonotor Sense RTLS, that part of the installation of the Sonotor Sense RTLS is in fact installing the location codes to configure your devices so that they can communicate with each other. Their amended complaint said, by making, using, selling, installing, marketing, etc., etc., etc. It never called on installation, but even on installation, we addressed installation in the sense that there are parts, like the backbone network, like the computer hardware, and like the Cisco access points, that we don't install. And we told them, in our interrogatory answer, they never came back and said... Are you talking about the backbone network and the server hardware? The backbone network, the server hardware, and the access points, which are provided usually by Cisco, which they say are the RF transmitters. Right. That's not part of the Sonotor Sense RTLS. It's not. It's part of the system that they accused. When you look, I think it's page 16 of our brief, we have the drawing that they used to show the infringement, and some of the components are things we supply and some of the components are things that we don't supply, that others supply. We said very clearly to them, we don't supply the backbone network, the Ethernet, we don't supply the access points, which you've alleged are the RF transmitters. We don't supply those things, so we don't supply the whole system. We don't install those things either. We didn't say we don't install them, but... When you said, we said to them, do you mean in your summary judgment motion? No, we said that in our interrogatory answers over and over, and that... And were they required in response to your interrogatory answers to say, we have two points to make. One, we actually think you're wrong about some of that, but two, it doesn't matter. Well, the point is... Because of cross-media. We gave them interrogatories. This was at A1187, our interrogatory answer. When were they required before the opposition to summary judgment to say none of this matters? They were required to give us their infringement contentions. They don't get to stop at the beginning of the case. They never supplemented their infringement contentions. And if you look at their reply brief, on page 30 they say, and I'm going to quote it, it is true that making and installing were not contained in Centrax infringement contentions or expert report. They never put making or installing in their... Not only in their contentions, they never put them in their expert report. We put in our expert report that, our expert was Dr. Heffy, that page A6... I thought their contention was supposed to track the requirements of the scheduling order. The scheduling order required basically a claim chart. And so, in fact, that's what they did. They itemized all the different components, whether they're from your sonotour sense system or from an existing backbone network, that when all put together would meet every single claim limitation. And that's all that the scheduling order required. It didn't require something more than that. And then we sent them an interrogatory and they didn't add anything to that in the interrogatory that we just looked at. Right, but they didn't follow up asking for clarification. What does this mean? I don't understand. We had no reason to believe that they were doing anything other than what was in their infringement contentions. Actually, the interrogatory is pretty... it hedges and it objects on various grounds. The discovery hasn't taken place. Experts haven't been identified and named. And it goes on and says, we can't answer, we're not going to answer because these events have not occurred. Did you ever follow up after those events occurred? Yep, we followed up only in the sense, not in the sense of writing them a letter. But we put in an expert report from Dr. Heppe, and this is at age 1642, and he said specifically in his expert report that Sanator doesn't make all of the components. He said that at 1642... So are you saying this interrogatory put you on notice that what you had to do? I don't think that... there was no interrogatory... there was an interrogatory to us asking us, why don't you infringe? And we clearly said, because we don't supply all of the components. That's at A1187. We then came in with an expert report where at A1642, our expert said, Sanator doesn't make all of the components. He said that clearly. Their expert didn't come back and say, well, you installed them. What their expert came back and said, this is Dr. Zakovich at A798-99. He came back and he said, well, if you don't make all the components, then there's induced infringement. That's what he said at A798-99. Never said the installation is an infringement. They said that there's induced infringement. When we got to summary judgment, we thought that there was going to be an induced infringement argument based on that. And Mr. Kaplan told Judge Andrews that that was not in the case, that their expert shouldn't have put that in. Can you address, I think he cited, I'm sorry for not following this, 798? Right, 798 and 799. So look at 798.  Yes, it is, Your Honor. And it says, I hope I can, well, this is not confidential. Although the backbone network required by the sonitor system may be based on a client's existing network infrastructure, each of the components of the sonitor sense portion of the backbone is configured by sonitor. And that is in support of direct slash induced infringement. Right, and then he goes on in paragraph 100 to talk about the direct infringement, I guess it's 99, the induced infringement. Right, and then he gets back to paragraph 100. It's my opinion, based on this understanding,  on a client's existing network infrastructure. The system directly infringes every asserted claim and the alternative induces. Why does that page 798 tell you that configuring produces direct infringement? Because we were never told anything about mapping location codes, Your Honor. And you will look throughout this record. Is that different from configuring? I'm sorry? Is that different from configuring? That is different than configuring. Configuring the location transmitters is putting them up where they belong in the system. The mapping location codes is the data entry. They never said a word to us about mapping location codes. And that's exactly what, in footnote 3, Judge Andrews said, this is a brand new theory of infringement. After summary judgment briefing, we had a summary judgment argument where we argued about whether they had evidence of installation. I thought your summary judgment brief was really more about the network, the backbone network doesn't belong to you. That's what it was about. And so that was your theory to try to end this case. Right. And they came back. We went back and forth about what the evidence was about installation. They never came back and said, well, your people are mapping the location codes. And that's what Judge Andrews said. I'm going to give everyone another chance to write me a letter and tell me what that installation evidence is. And they wrote back a letter for the first time in this entire case raising mapping location codes. And Judge Andrews said, after we had gone through this over and over, it's untimely and it's unpersuasive. I would like to make a point on the merits because I have a feeling we're just getting tied up in the procedure of what happened. And going down memory lane can be fun, but there is also no... You make a big wave of arguments, so this is not unimportant. I understand that it's not unimportant. And it was the judge's ruling that they couldn't raise this. And I haven't heard an abuse of discretion argument. I just heard that they should have been able to raise it. But there is also no evidence in the record that mapping location codes is the last thing that happens. They never took discovery on this. And when you look at the evidence they have about this... I thought that's what Mr. Cormier basically said. No, he doesn't say it's the last thing that happened. He said, our people enter data. He never said that was the last thing that happened. They enter the data and they fine-tune it to make sure everything's operational. That doesn't mean it's the last thing that happened. The gateways have to be installed. The Ethernet, the network backbone, has to be connected to the system. The tags, the personal devices, the tags, they have to be activated. There was no testimony about the order in which things happen. And on that point, we don't know of any... Was there some testimony that you can't make sure everything is working unless all the other stuff has been? I don't think there was any testimony saying that. And the other... on the legal side of this, even if we did map the location codes as the last thing, we don't know of any law that says if you go in and you map the location codes and someone else has put in other parts of the system, that that makes you the infringer of the whole system. He talked about cross-medical. Cross-medical was a very different case where Medtronic gave a device with three of the four claim elements to a surgeon. And he added the fourth. And then we have Centillion. And Centillion... I think they're consistent. Centillion says when you combine all of the elements, you can be a direct infringer. That's different from saying if you install, if you put the data in and that's the last thing that happens, everything that happened before becomes yours. That doesn't make you the person who combined all the elements. That makes you the person who took that step. But that's... I mean, for example, if... Counselor, you're out of time, but I'm going to let you conclude, okay? Thank you, Your Honor. The... On the legal point, it's like saying that if a third... excuse me, a third-party software company was hired to input the location codes, that that makes them responsible for the whole system. And that's not anything that's supported by any law. Very different to say Centillion, which is what we relied on, if Centillion requires combining all of the claim limitations and saying, well, you did the last thing, and therefore you're responsible for everything that happened before that. We don't know of any case that supports that. Cross doesn't. Lifetime doesn't. Centillion doesn't. I would have liked to talk a little bit about written description, but I see that I'm... I'm 19 minutes into my 15 minutes. Thank you. I've been very generous to everybody today, and I'm beginning to regret it. I'm going to put you back to three minutes, and let's see if you don't use it all up, okay? Okay, thank you, Your Honor. Just a few points. First, he pointed you to this inducement thing at 798. It was an extraneous thing the experts... Talk about mapping location codes. I will, but at 797, the expert actually said that they build the infringing, they build the entire infringing system, and then he went on to explain this. The location codes, Your Honor, all of... Remember, their original motion was we don't supply the backbone network. We then put in all the installation stuff that they did do and said the backbone network being supplied by the customer doesn't matter. I'm sure the counsel made a mistake, but the location code testimony was in that original opposition. That's part of the original opposition brief we filed. I think it's at 128 or 129. You'll see the same testimony cited. It's just the only difference between our opposition and the supplemental stuff is simply that the supplemental stuff is a subset because when we filed the opposition, we had no notice from their opening brief that they were disputing they do the rest beyond the backbone network. So we basically said, okay, you don't do the backbone. We've charged you with the rest. Your witness has admitted that he supervises the son of the support team when they're, quote, in the field doing an installation. We all agree you do the installation. The failure to provide the backbone network is no defense. When they said we're disputing that we do some of that installation, three months later at summary judgment, we said, okay, we won't fight you on that even though we disagree. We'll take this last part of the installation because that's sufficient for us to win and that you don't dispute even now. So the location code was in there. I believe, Your Honor, I can't say this for certainty, but I am 90% sure that the location code is somewhere in the expert charts or report. I can't locate it right now, but it doesn't matter. It was our opposition. You know, our expert told them that it was making an issue, and they knew. Their summary judgment motion said I think seven or eight or nine times we don't make, we don't make. And the final point I want to make on this procedural thing, Your Honor, is that there's a whole story here about how we didn't disclose making, but what did they think we were pursuing? We didn't disclose selling or offer for sale, and they filed a summary judgment motion, and he showed you nothing to support his statement that he's made to the court that the case was always based on the sale. And, in fact, there's another blank place where there should be a citation. If you look at footnote 11 of their brief, they say, well, we didn't move for summary judgment on this making theory. They sort of agree. And they say, but we couldn't have been expected to move on something that Centrac never asserted, as if they were only moving on what we did assert. But they don't tell you what else they think that was, because there's nothing inconsistent. For the time of the expert report, we were telling them it's making, and that's why their summary judgment, I think it's like seven or eight times, says we don't make, we don't make the system because we don't supply the backbone network. So I admit that. One final, final point, and I promise to keep quiet. I've watched you guys have a long day. The only other point I want to make is this whole procedural history. I mean, I've been up for probably 10 cases at this court. I've never seen something like this. This entire procedural history, if they had any point or any merit to it, he could very easily prove that by pointing you to a pleading or a brief or something Centrac submitted where it said we're only proceeding on selling or it's not making or it's a joint infringement. I've searched the appendix. There's no allegation of that. And all these representations about they're asserting joint infringement. They're raising new theories. They say Centrac couldn't have been correcting our reliance, Sonata's reliance on method claim theories because Sonata never relied on method claim. But their brief clearly cites BMC and argues split infringement. This entire overtone of everything's been raised late and it should be, it's an effort to avoid the merits of the cross-medical case. I think that's a good place to stop. I'm sorry? I think that's a good place to stop.